Any of this is American Bankers Insurance versus Robert Shockley appeal night telling where I am. All right, Mr. Myers. Good morning. He's the court. Mr. Grayson. My name is Ted Myers and I represent the appellant Robert Shockley with the court's permission. I would reserve three minutes of my time for rebuttal. In November 2016, Mr. Shockley was seriously and permanently injured when he's crushed by a golf cart driven by Susan Roxy who is an employee of SFC Enterprises. The accident occurred at the Bergen Hills Writing Center during a writing club event sponsored by SFC. Mr. Shockley filed suit and SFC looked to its insurer American Bankers for coverage. American Bankers filed this deck action because it believes that the accident occurred off-premises and that coverage and its indemnity obligations are not triggered. The district court agreed and entered summary judgment finding that the policy at issue was a farm owners type policy and does not provide coverage for off-premise activities. There are three principal reasons why the district court's decision must be reversed. The first is that the application of rules of contract construction establish that the policy declaration provides CGL or commercial general liability coverage to SFC. Secondly, Americans issuance of an additional insured endorsement to the Kane County Fairgrounds provide conclusive evidence that America not only knew but intended to provide coverage for SFC's off-campus activities. And finally, LA law looks when construing a CGL policy at the expectations of the insured that its ordinary business risks will in fact be covered unless the insurer provides provides express and prominent exclusions of that coverage and that expectation. Turning to the first point LA law tells courts to look at the entire policy documents, not just one part or another. Here, the policy documents consist of 72 pages including the policy declarations, standard forms, endorsements and exclusions. The policy declarations are the first three pages. They're typewritten, they're customized and expressly state that all risks associated with SFC's equestrian business operations will have commercial general liability coverage and specifically states that riding clubs and academies are covered with additional premium cost of over $2,000. Now the District Court adopted Americans argument that the policy declaration was nothing more than an underwriting tool to establish premiums. Now, this is absolutely contrary to all Illinois precedent and I would direct the court to Hobbs v. Hartford that states the declaration is an essential and wholly appropriate place for the courts to look for coverage. So establishing that the policy declarations are relevant, then we have the issue of, well, it conflicts with the standard farm premises form that has this limitation. Again, rules of contract construction establish that where you have typewritten, customized provisions like here saying your equestrian business operations are covered and then later, in this case, 57 pages later, a pre-printed form intended for a grain farmer to say that, hey, the coverage is limited to your premises. Well, then the typewritten, customized provisions must prevail. Now, moving on to the second point, American says, well, even if that's true, we don't have coverage obligations here because we didn't know and had no reason to know that SFC operated off-premises. Well, that's peculiar because they issued an additional insured endorsement to the Keene County Fairgrounds. Now, that endorsement states not that Keene County has primary insurance, but only additional insured insurance, which is wholly dependent upon an activity of the primary insured. So, unless SFC is operating at the Fairgrounds, there can be absolutely no reason to issue the endorsement. So by issuing the endorsement, American clearly knew that SFC was operating outside of its borders and that it needed coverage for those operations. Did the Americans normally have trail riding, what I would call trail riding, off their premises? Your Honor, I didn't quite catch the question. Trail riding off the premises of the, where the horses are stabled and so forth. My audio broke there for, I apologize. Will you do that one more time, Your Honor? The trail riding normally includes riding off-premises. Does it not? Right, right. You're right. Trail riding certainly would be off-premises and again, it would be quite expected if you're running a horse center that you're going to have off-premise activities and to suggest that they wanted coverage limited or expected coverage limited certainly doesn't make any sense and nor does it make sense that American had no idea that there would be off-premise liabilities associated with the business. Both parties knew what trail riding was. In other words, that's the kind of thing that they, that this stables normally did, right? Yes, Your Honor. Absolutely. All right. Thank you. Could I ask you something, please? With respect to the motorized vehicle coverage, I take it that your position is that if the first sentence that American Bankers relies on excludes injuries arising from all off-premises use of a vehicle, there wouldn't be a need. There would be no need for the parenthetical referring to off-site recreational uses and that's the ambiguity. Do I understand your position correctly? Yes, Your Honor. That is correct under that maxim that if you exclude one thing, you implicitly include the other. So if you're saying we're not going to cover you if you're using a golf cart off-premises, if it's used recreationally, the maximum provides, well, then you must have meant to provide coverage if it is used for business purposes. Okay. Thank you. Did I answer your question, Your Honor? Yes, and I put you into your rebuttal with it. I'm sorry. All right. Okay. Okay, Your Honor. I guess I'll reserve the rest of my time for rebuttal. Thank you so much. All right, Mr. Marsh. Thank you. Mr. Rasek. Good morning, Your Honor. This may have pleased the court. Joel Drasek on behalf of American Bankers Insurance Company of Florida. This court may affirm the District Court's judgment for two reasons. First, American Bankers issued SFC, a property policy that includes limited liability coverage for bodily injury arising out of the ownership, maintenance, or use of designated insured premises or out of operations necessary or incidental to those premises. Here, there's no dispute that Mr. Shockley sustained his injuries at a location 15 miles away from the insured premises designated in the policies declarations. As a result, the District Court correctly determined that there's no coverage for Mr. Shockley's lawsuit. Were the parties aware that typically trail riding includes off-premises riding the horses go to other locations other than just on where the stable is located? Your Honor, the record is silent as to the party's knowledge with respect to trail riding, but I think the trail riding example, Your Honor describes might be a situation that could implicate off-premises activities that are incidental to these insured premises and it would come down to an analysis of whether the trail riding were proximate to those insured premises. Whereas here, we have a situation where Mr. Shockley's injuries arose 15 miles away from these insured premises and you just don't have the any argument that this can be incidental to those premises in the way that proximate trail riding might be. What about naming the fairgrounds as an additional insured? Why agree to that unless you know activities are taking place off-premises? I mean, was it a mistake? Your Honor, the record silent as to the party's intent in including that endorsement, but ultimately this additional insured endorsement for the fairgrounds is irrelevant to the assessment of coverage for Mr. Shockley's lawsuit here. With respect to the coverage for motorized vehicles, why is the parenthetical about off-site recreational injuries necessary? If you say there, you know, there's no coverage in the first place for any off-premises use of the motorized vehicle. There'd be no need. Your Honor, I think that parenthetical is entirely reconcilable with American Banker's position here. So as Judge Kaney was asking, there may be circumstances when an individual might engage in operations with a motorized vehicle that are incidental to insured premises, but result in a brief off-premises diversion from the premises. So you can imagine a situation where if instead of operating the golf cart 15 miles away, Ms. Rattay and Mr. Shockley were operating the golf cart on these insured premises, but as that parenthetical describes, it was for recreational use. They were just joyriding and maybe they drive into an adjoining pasture. It might be a situation where the operations were incidental to the premises, but because the operations were recreational, they weren't servicing the insured premises there that it would fall within that parenthetical language. You see, here's what is bothering me and you can help me. The section of the policy providing commercial liability coverage refers to known exposures, you know, quote, known exposures and lists those activities, but makes no mention of on-site versus off-site activities. Why shouldn't we construe this language against the insurer and say that it covers all injuries arising from the known identified risks regardless of where they occur? I mean, it does seem to me that the insurer could and should have known which of SFC's activities took place off-premises and would have inserted language limiting liability coverage to the on-site activities. If, if that was the intent. I mean, it doesn't strike me. It doesn't strike me as unusual that a business like this would have off-premises activities as well as on-site activities. Your Honor, I think this is an important illustration of how these declarations operate in conjunction with the substantive forms and endorsements that comprise the policy here. So, Your Honor, the declarations are absolutely an important part of the policy and they provide these important details such as the insurers of the premises. And in this case, these classifications, which are really just a tool for assessing the risks associated with this business. But this policy that American bankers chose to, excuse me, that SFC chose to purchase from American bankers here is functionally a property policy that provides liability coverage limited to the on-premises risks associated with this location. The reality is that SFC had the option to choose to purchase a commercial general liability policy and instead that they purchased this farm owners policy that which functions much more similarly to a homeowner's policy that Your Honors may be familiar with, with the property coverage and the liability coverage associated with these on-premises risks. So Your Honors, for a business like this that maintains a horse farm and maintains stables and riding clubs on the premises, it's entirely reasonable that they might anticipate that they're going to be individuals coming onto the premises whether to be boarding horses or attending one of these riding clubs and that incidents might occur that might give liability, give rise to liability on those premises. And that's why this policy includes this liability coverage part. But the reality is this just isn't a general commercial liability policy that's designed to cover all all of the business operations of SFC, which was a product available to it in the market. So really the coverage to the extent it provides liability coverage to this insuring agreement is very precisely tied into the insured premises that SFC obtained coverage for. What was the purpose of the golf cart being out there? Why was it there? Your Honors, to the extent there are allegations about the golf cart in the underlying lawsuit, it's alleged that it was being used to assist with supervising riding horses at the insured premises. So there's beyond that there's no connection between this golf cart and the insured premises. That's what was my assumption. It was there on where the trail would be set out and they were covering that area. Is that what they indicate? It's true, Your Honor. Yes, it alleges that the golf cart was being used to supervise horse riding at that location. But I think the key point here, Your Honor, is that the policy provides coverage for bodily injury incidental to the insured premises, not to SFC's business operations. I think when you look at the policies insuring agreement, that's the key point to consider. It's a to the extent the policy provides this liability coverage.  for coverage incidental to these premises. If I can interrupt just a minute. For full disclosure, I was raised on a horse farm. And so I rode and trained horses and all kinds of things. But we also went to horse shows. I've never been on a horse. Well, I have too. But in any event, we would go to horse shows and I assume you're comparing your the premises versus something like a horse show. Where people go and show their horses and compete with other horses and that sort of thing. Is that my understanding? What you're talking about the premises, meaning the where the horses are have their stalls and pastures and what have you versus where you go somewhere else for some type of other event. Yes, Your Honor. That's precisely it. The insuring agreement of the liability coverage in this policy conditions coverage on bodily injury arising out of the insured premises designated in the declarations. The declarations refer to a very specific location in St. Charles. And the reality is that Mr. Shockley's injuries arose at a location 15 miles away that Judge Manning might compare to the horse show that you're describing. So the liability for bodily injury that's not connected to these insured premises simply isn't covered under the insuring agreement of this policy. What was the fairgrounds? Why was that added fairgrounds? Your Honor, the record is silent as to the reason for the addition of that endorsement regarding the fairgrounds. But the reality is it only amends the definition of insured and not its insured premises requirement. And Your Honor, I Well,  fairgrounds. Was it intended to cover the insured there? Your Honor, I see my time is up. I go ahead and answer the question. Your Honor. It's an event occurred at the fairgrounds. The reality is that the endorsement amends the definition of insured so it might provide coverage to the fairgrounds as an insured entity, but the it has no effect on the insured premises requirement, which is a different defined term that must be implicated for coverage to arise under the insuring agreement. Okay. Thank you. Thank you. Mr. Myers. Your Honor. I think what we heard again is that according to American policies are to be interpreted based on the insurance companies expectations of not providing coverage to suggest that SFC should have bought coverage for its business. When in fact on page three, it says specifically of the declarations in typewritten form that hey, you get commercial liability coverage for all business risks, including riding clubs and Academies. Now, if you look at Dash, Rice and Crumb, they will not allow American 57 pages later in a pre-printed form designed for grain farmers to take the coverage away. That is exactly what Rice said and Dash where the insurance company did the same thing. They had endorsements at the end of the policy taking away limiting the coverage to the insured premises. So it is kind of difficult to imagine how SFC did not think they had purchased commercial liability coverage when on page three, there's a box that said check this box if you don't want commercial liability coverage, the box isn't checked. Premiums are charged for riding clubs and they're saying too bad. They should have gone 57 pages later in the boilerplate and realize we were just kidding here. So I think when you look at the case law, you look at this this insured the additional insured endorsement. How in the world can you issue that and say you had no idea that they operated at horse shows and clubs outside of the premises. I think this is a clear case where coverage needs to be found and summary judgment entered in favor of coverage. Thank you, Your Honors. Thank you. Thanks to both Council and the case will be taken under advisement.